UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                        Case No. 2:24-CR-169

WILLIAM LEE HOMAN,

        Defendant.

---

## UNITED STATES' SENTENCING MEMORANDUM

---

Former Waupun Correctional Institution (WCI) Facilities Repair Worker William Homan ("Homan") used the trust and access that came with his position to smuggle drugs, cellular phones, and tobacco to inmates in exchange for money. In doing so, he placed the lives of inmates and other prison staff at risk, threatened the security of the prison community, and diminished the public's confidence in the ability of WCI to provide safe and secure confinement for the people entrusted to its care. This abuse and erosion of the public's trust demands a meaningful sentence.

The United States respectfully requests that the Court sentence Homan to a term of imprisonment within the advisory Sentencing Guidelines range, to be followed by a term of supervised release. The United States further requests that the Court order forfeiture in the amount of $54,149.

# BACKGROUND

## I. WCI Placed on Lockdown and Searches Conducted

In March 2023, WCI, a state-run, maximum-security prison, was placed on modified movement across the entire institution due to a lack of institutional control. The presence of contraband in WCI contributed to this lack of institutional control. The modified movement status involved all members of the prison population being confined to their cells twenty-four hours a day except for medical or other emergencies. As part of its efforts to reestablish control, a facility-wide search was conducted, resulting in the recovery of numerous cellular phones, controlled substances, and other contraband. WCI provided information obtained from its investigation to the Federal Bureau of Investigation (FBI), which included information that WCI staff were receiving bribes in exchange for smuggling in contraband. Based on that information, the FBI, the U.S. Attorney for the Eastern District of Wisconsin, and the Department of Justice Criminal Division's Public Integrity Section opened an investigation to address this dangerous form of corruption.

## II. The Instant Case

On September 12, 2024, Homan waived his right to prosecution by indictment and entered a guilty plea to an information charging him with one count of conspiracy to commit bribery in violation of 18 U.S.C. § 371. (Docs. 1, 2, 6 and 7). As a result of his plea agreement, Homan faces a maximum term of imprisonment of five years. 18 U.S.C. § 371. As part of the Plea Agreement, Homan admitted to his criminal conduct, including that he had received approximately 125 bribe payments from July 17, 2022, through September 30, 2023, totaling $53,579 in exchange for smuggling contraband into WCI. (Doc. 2 at ¶ 6).

# DISCUSSION

## I. The Advisory Guideline Range

It is well established that a court should consider a variety of factors when imposing a sentence on a criminal defendant, including the applicable range established by the Guidelines Manual issued by the United States Sentencing Commission. 18 U.S.C. § 3553. Although the Sentencing Guidelines and policy statements are advisory in nature, courts "must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). A sentencing court thus begins by calculating the applicable guidelines range, which serves as "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). The court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a), including the nature and circumstances of the offense and the history and characteristics of the defendant. *See Nelson v. United States*, 555 U.S. 350, 351 (2009) (explaining that after the court determines the applicable guidelines sentencing range, it must "consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors").

The parties stipulated in the Plea Agreement that the base offense level for the offense conduct is 14 pursuant to U.S.S.G. § 2C1.1(a)(1). (Doc. 2 at ¶ 16). The parties also acknowledged that the United States would recommend a 2-level increase for more than one bribe pursuant to U.S.S.G. § 2C1.1(b)(1), as well as a 6-level increase for more than $40,000 in bribe payments pursuant to U.S.S.G. §§ 2C1.1(b)(2) & 2B1.1(b)(1)(D). (Doc. 2 at ¶¶ 18-19). The United States also agreed to recommend a 2-level reduction pursuant to U.S.S.G. § 4C1.1(a), if Homan met the necessary criteria, as well as an additional 3-level reduction pursuant to U.S.S.G. § 3E1.1(a) & (b) for acceptance of responsibility. (Doc. 2 at ¶ 20).

The Probation Office agreed with the parties' above-detailed stipulations and recommendations, which resulted in a total offense level of 17, and a guideline imprisonment range of 24 to 30 months. Presentence Investigation Report (PSR) at ¶¶ 27-37, 77.

## II. The Section 3553(a) Factors

The advisory guidelines range is only one of several factors that this Court must consider when imposing a sentence consistent with 18 U.S.C. § 3553(a). *See Kimbrough v. United States*, 552 U.S. 85, 90 (2007). The other factors include the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and deter criminal conduct; and the need to avoid unwarranted disparities in sentencing. 18 U.S.C. § 3553(a).

### A. The nature and circumstances of the offense and the history and characteristics of the defendant (18 U.S.C. § 3553(a)(1))

The nature and circumstances of Homan's conduct demands a serious and meaningful punishment. Indeed, "the community—historically and presently—requires that real, tangible, and severe consequences meet those who gain a position of public trust and then abuse that trust for personal gain." *United States v. Sorenson*, 233 F. Supp. 3d 690, 699 (S.D. Iowa), *aff'd*, 705 F. App'x 481 (8th Cir. 2017).

As described in detail in the Plea Agreement and PSI, Homan accepted bribes in exchange for using his position as a Facilities Repair Worker to smuggle contraband—including drugs and cellular phones—into WCI. Though his job was to ensure the safety of WCI by conducting necessary maintenance and repairs, Homan instead exploited his position of trust for financial gain. Homan did so knowing that his actions could pose a danger not only to fellow WCI staff and the inmate population, but also to the broader community. *See, e.g.*, *Smith v. Fairman*, 678 F.2d 52, 54 (7th Cir. 1982) ("[T]he smuggling of weapons, drugs or other contraband . . . could pose a

serious threat to the safety of corrections personnel and other inmates, or indeed, to the institution itself."); *United States v. Dodd*, 770 F.3d 306, 312 (4th Cir. 2014) ("When correctional officers accept bribes to bring contraband to prisoners, they endanger those inside and outside of the prison."). He must be held responsible for that choice and its consequences.

Additionally, Homan's criminal activity was not an isolated event or a single moment of weakness. As detailed in the Plea Agreement and the PSI, Homan's criminal conduct occurred repeatedly for more than a year. This repeated, long-term criminal conduct on the part of Homan is an aggravating factor.

### B. The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense (18 U.S.C. § 3553(a)(2)(A))

As a member of WCI's staff, Homan was a public official whose duty it was to keep inmates and staff at WCI safe. But he violated that duty to line his own pockets. Through his conduct, Homan willingly exposed the inmates and staff at WCI, as well as the broader community, to the very dangers he was trusted to safeguard against, and he actively undermined the prison environment, which is crucial to our system of justice. Every day at WCI, Homan was face-to-face with the consequences of engaging in criminal conduct, yet still chose to smuggle in contraband and accept tens-of-thousands of dollars in bribes.

A meaningful term of incarceration is required to promote respect for our anti-corruption laws and to restore faith in our nation's law enforcement institutions.

### C. The need for the sentence imposed to afford adequate deterrence to criminal conduct (18 U.S.C. § 3553(a)(2)(B))

The sentence imposed must send a message of general deterrence: corruption amongst prison officials will not be tolerated. Thus, the sentence should demonstrate that those who abuse their positions of trust will face serious consequences. *United States v. Spano*, 411 F. Supp. 2d

Page **5** of **7**

Case 2:24-cr-00169-LA    Filed 12/04/24    Page 5 of 7    Document 14

923, 940 (N.D. Ill) (explaining that it is necessary "to impose strict penalties on all defendants who engage in [public corruption]"), *aff'd* 447 F.3d 517 (7th Cir. 2006). The need for general deterrence is particularly important in cases such as this one, which erode public confidence in our institutions and are notoriously difficult for law enforcement to detect. *See, e.g.*, *Sorenson*, 233 F. Supp. 3d at 699 ("Sentencing corrupt office holders to a colloquial 'slap on the wrist' may over time exacerbate an endemic cycle of corruption."); *Spano*, 411 F. Supp. 2d at 940 (explaining that crimes committed by public officials "undermine[ ] the essential confidence in our democracy and must be deterred if our country and district is ever to achieve the point where the rule of law applies to all").

Homan could have chosen a different path. He could have denied inmates' requests to smuggle contraband into the facility, or he could have reported their requests, along with the alleged threats, to a supervisor or law enforcement. Instead, while in a position of authority and trust, Homan decided to accept bribes and smuggle contraband into WCI. The sentence in this case should be sufficiently serious to deter future public officials from similarly putting their self-interest above loyalty to the law and the safety of others. It also should send a message that the job of a corrections facility staff is one that requires integrity; it is not a job to be sought or accepted with the expectation that it can be used for illicit financial gain. Those who, like Homan, abuse their positions of trust must receive appropriately serious punishment, which is "[t]he only way to protect the public from the ongoing problem of public corruption and to promote respect for the rule of law." *Spano*, 411 F. Supp. 2d at 940.

Indeed, "[w]hen a person bribes [correctional officers] to do some act in contravention of their duties, that person is paying the officers to violate not only the law, but also the public trust placed in them," thereby "undermin[ing] the integrity and effectiveness of our criminal justice

system." *Dodd*, 770 F.3d at 312; *see also Sorenson*, 233 F. Supp. 3d at 700 ("The deviant acts of the corrupt public official are of course horrific, 'but a hundred times worse is the demoralization of our people which results.'") (quoting Justice Louis Brandeis, *Speech to the Good Government Association* (1903)); *Spano*, 411 F. Supp. 2d at 940 ("Public corruption demoralizes and unfairly stigmatizes the dedicated work of honest public servants."). Here, the combination of corruption by bribery with the smuggling of contraband to inmates demands a significant sentence to protect the people of Wisconsin and to help restore their faith in their public institutions.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court impose a term of imprisonment within the advisory Sentencing Guidelines range, to be followed by a term of supervised release, and order forfeiture in the amount of $54,149.

Respectfully submitted this 4th day of December, 2024.

| | |
|---|---|
| GREGORY J. HAANSTAD<br>United States Attorney | COREY P. AMUNDSON<br>Chief, Public Integrity Section |
| *s/ Zachary J. Corey*<br>BY ZACHARY J. COREY<br>Assistant United States Attorney<br>517 E. Wisconsin Ave., Suite 530<br>Milwaukee, Wisconsin 53202<br>(414) 297-1174<br>Zachary.Corey@usdoj.gov | *s/ Aaron L. Jennen*<br>BY AARON L. JENNEN<br>Trial Attorney<br>1301 New York Ave. NW, 10th Floor<br>Washington, D.C. 20530<br>(202) 307-1945<br>Aaron.Jennen2@usdoj.gov |