UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.    Case No. 24-CR-169

WILLIAM HOMAN,

    Defendant.

## DEFENDANT'S SENTENCING MEMORANDUM

The Defendant, William Homan, by and through counsel, Craig S. Powell, of HART POWELL, S.C., hereby respectfully submits this sentencing memorandum in anticipation of Homan's sentencing, set for December 12, 2024.

### A. Introduction

Though this case involves a conspiracy to commit "bribery," this is not a political corruption case. William Homan was a maintenance worker at Waupun Correctional Institution. He was not a sworn law enforcement or correctional officer. He was not a warden or an administrator. He fixed broken stuff. In this capacity he had contact with inmates who were assigned to work in the maintenance shop. A few of these inmates used these opportunities to befriend and manipulate Homan into agreeing to bring contraband items—primarily tobacco, but also occasionally cell phones and marijuana—into the institution for them. The inmates paid him for doing so. Homan was caught and the FBI came knocking on his door. When they did, Homan immediately confessed. He quickly reached a pre-indictment agreement to plead guilty. A lifelong rural Wisconsinite, for whom

HART POWELL, SC
ATTORNEYS AT LAW
735 NORTH WATER STREET
SUITE 1212
MILWAUKEE, WI 53202
(414) 271-9595

hunting stood as the central activity around which his family life revolved, Homan is now a convicted felon.

This Court should impose a non-guideline, probationary sentence. Such a sentence is entirely consistent with and is sufficient but not greater than necessary to achieve the sentencing goals and purposes set forth in 18 U.S.C. § 3553(a).

**B. Analysis and Application of Section 3553(a) factors**

In sentencing a defendant, the Court must consider all the factors set forth in § 3553(a). *United States v. Harris*, 490 F.3d 589, 593 (7th Cir.2007), *cert. denied*, 128 S.Ct. 963, 169 L.Ed.2d 770 (2008). Those factors include:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed-

(A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) To afford adequate deterrence to criminal conduct;

(C) To protect the public from further crimes of the defendant; and

(D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) The kinds of sentences available;

(4) The advisory guideline range;

(5) Any pertinent policy statements issued by the Sentencing Commission;

(6) The need to avoid unwarranted sentence disparities; and

(7) The need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

**HART POWELL, SC**
ATTORNEYS AT LAW
735 NORTH WATER STREET
SUITE 1212
MILWAUKEE, WI 53202
(414) 271-9595

After considering these factors, the district court must select a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing, which are (A) just punishment, (B) deterrence, (C) protection of the public and (D) rehabilitation of the defendant. § 3553(a)(2).

1. **Nature and Circumstances of the Offense**

As noted above, Homan was a maintenance worker at Waupun Correctional Institution. He did routine maintenance such as changing light bulbs, hanging/fixing clotheslines and mirrors, and fixing other broken items in inmate cells and throughout the institution. Homan also ran the weld shop. Homan would have 2-3 inmate workers helping him in the weld shop or maintenance shops. Over the course of his employment at Waupun, Homan had contact of this nature with 6-12 inmates.

Homan is a friendly person, and Waupun Institution is a tough place. Some inmates who worked with Homan took advantage of Homan's friendly nature, making efforts to ingratiate themselves with him and ultimately engender some sympathy from Homan for their situation. They would eventually use this manipulative behavior to ask Homan to bring in contraband for them and to be paid well to do so.

From Homan's perspective, this is something he knew was happening elsewhere in the institution. Housing units constantly smelled of tobacco and marijuana. And money at home was tight. Inmates offering hundreds and hundreds of dollars for a couple packs of cigarettes proved too much to ignore[1]. He agreed to do so. Over time, Homan was doing this for several inmates he had come to know. At times, he would meet the girlfriend or wife of one of the inmates to pick up what he was told was a cell phone to bring in. Eventually the

---

[1] In an interview with investigators, then Warden Randall R. Hepp said that a pack of cigarettes would go for as much as $400.

HART POWELL, SC
ATTORNEYS AT LAW
735 NORTH WATER STREET
SUITE 1212
MILWAUKEE, WI 53202
(414) 271-9595

inmates would communicate with Homan about payment and items through WhatsApp cell phone messaging application.

It was not a sophisticated operation. Homan would either buy the tobacco products or pick up other items from inmates' girlfriends and bring them through the maintenance gate at the institution. He would then bring them up onto the unit while he was working. And it wasn't much of a secret. Homan was caught when another inmate, who was not involved, told Waupun security staff that Homan would be delivering tobacco to an inmate on a specific day. Homan was observed going onto the housing unit of the inmate that day and was stopped. He was in possession of 2 packs of cigarettes and a Ziploc bag with pouches of chewing tobacco. He was walked out of the institution and suspended; he ultimately resigned.

Homan never brought in hard drugs such as cocaine, opiates, methamphetamines, or pills. He did not bring in any weapons. Homan used the money he obtained to supplement his daily living expenses. It was not used for an extravagant or luxury lifestyle.

**2. History and Characteristics of the Defendant**

"Hardworking," "quiet," and "very helpful; sometimes to a fault." This was the description of Mr. Homan his wife, Kimberly, provided to the PSR writer. (PSR, ¶ 56). This combination of characteristics is likely what made Mr. Homan someone who the inmates thought they could approach with their proposal without fear. That Homan acquiesced and agreed to bring them things they weren't supposed to have is his responsibility alone; however, these personal characteristics help explain why someone with his otherwise pro-social background would make such bad decision.

**HART POWELL, SC**
ATTORNEYS AT LAW
735 NORTH WATER STREET
SUITE 1212
MILWAUKEE, WI 53202
(414) 271-9595

Homan has lived in central Wisconsin his entire life. Though his parents divorced when he was young, it appears that the split-family harmony was relatively good. He maintains contact with his siblings and half-siblings, and even his ex-stepfather. Homan did not graduate from high school, but did obtain his GED once it was made known to him that he would not graduate with his class. He has had only one run-in with the law in his life, a misdemeanor retail theft from over 25 years ago in Dane County for which he received, and successfully completed, probation.

He has a steady work history of manual labor. He worked as a landscape supervisor for 13 years, from 2006 to 2019, before he took the maintenance job at Waupun. When he resigned from Waupun in November 2023, he had already been hired at Saputo Cheese as a forklift driver, where he works now.

As with his solid family relationships outlined above and in the PSR, Homan has been with his wife for 23 years. She has described them as "outdoorsy people," and the PSR at various places notes how hunting and fishing are the center of Homan's interests. It is what he loves to do; it is what he did with his father; it is what he does with his wife; and, with no children of his own, it is what he loves to do with his 15-year-old nephew.

Against this background, it is easy to see why Kimberly described her shock at FBI agents knocking on her door, and how Homan's behavior underlying this prosecution is so "very out of character" for Homan.

Those agents knocking on Homan's door also provide evidence of Homan's otherwise good character. They came with a search warrant for Homan's phone, and they left with Homan's admission to the conduct. Homan was cooperative with the agents, answering their questions. He waived indictment and agreed to plead guilty immediately,

**HART POWELL, SC**
ATTORNEYS AT LAW
735 NORTH WATER STREET
SUITE 1212
MILWAUKEE, WI 53202
(414) 271-9595

which he has done. His swift and complete acceptance of responsibility speaks well of his character.

2. **Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense.**

Mr. Homan's offense conduct, bringing tobacco, cell phones, and marijuana into the prison institution is admittedly serious. Institutional rules against the possession of certain items exist for a reason; and Homan's introduction of contraband items can serve to undermine those in authority over the inmates. That being said, there is no evidence in this case that Homan providing the items he did actually endangered anyone, be it inmate or staff. Homan did not bring in weapons or dangerous drugs. The fact that Homan has been federally prosecuted for his behavior, to the apparent exclusion of all others, itself serves to highlight the seriousness of the offense.

Moreover, the collateral consequences of Homan's felony conviction are extremely significant to him. A central part of Homan's life and family is hunting. It is what connected Homan and his recently-deceased father; it is a shared love of his and Kimberly's; and it connects him with many of his other family members and friends. Homan has lost a large part of that as his behaviors and actions have resulted in the forfeiture of his fundamental constitutional right to possess a gun for any purpose. For Homan, this is a lifelong punishment.

3. **Adequate Deterrence to Criminal Conduct**

Probation is sufficient, and incarceration is not necessary, to deter Homan from future criminal conduct. The Government argues for a period of imprisonment within the guidelines range, primarily for purposes of punishment and deterrence. (See, generally, Dkt. 14). In so arguing, the Government cites several cases touting the need to impose strict

Hart Powell, SC
Attorneys at Law
735 North Water Street
Suite 1212
Milwaukee, WI 53202
(414) 271-9595

6

penalties on cases of "public corruption," and malfeasance by "public officials." For example, the Government cites to *United States v. Sorenson*, 233 F. Supp. 3d 690, 699 (S.D. Iowa, 2017) on two separate occasions for the proposition that "severe consequences" and "strict penalties" are necessary for those who "abuse public trust for personal gain" and who "engage in public corruption." (Dkt. 14, at 4, 6). *Sorenson* involved a Republican state senator in Iowa who was effectively selling his endorsement to different Republican candidates for President and demanding that payment be made in ways that would avoid FEC filing regulations. Interestingly, Sorenson's guidelines, like Homan's, were 24-36 months. But in that case, which the Government here cites to support its argument that the severe penalty of imprisonment is warranted, *the Government argued for probation*. *Id.* at 696.

Homan is not a political official. Nor is he the type of "public official" one normally associates with the idea of public corruption. He was not a policy maker. He was not a decision maker. He had no control or discretionary input in the expenditure of public funds or resources. The Government asserts in its sentencing memo that Homan was "a public official whose duty it was to keep inmates and staff at WCI safe." But the Government overstates it significantly. Homan was a maintenance worker at the prison. He was not a sworn officer. He was employed to hang mirrors, repair broken fixtures, and the like. He was a low-level employee who gave in to financial temptation. "The offense conduct here did not reflect the sort of governmental corruption at which the statutes and guidelines are most directly targeted." *United States v. Lupton*, No. 07-CR-219, 2009 WL 1886007, at *9 (E.D. Wis. June 29, 2009). In short, the type of "severe measures" the government seeks are not necessary to achieve the deterrent purpose in this case.

HART POWELL, SC
ATTORNEYS AT LAW
735 NORTH WATER STREET
SUITE 1212
MILWAUKEE, WI 53202
(414) 271-9595

4. **Protect the Public**

In light of Homan's otherwise pro-social history, and his immediate acceptance of responsibility in this case, Homan's behavior does not indicate that incarceration is necessary to protect the public from further criminal behavior.

5. **Defendant's Need for Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner.**

Homan is employed, has a lengthy work history and a GED, and he has no substance abuse issues. Incarceration is not needed to provide any correctional treatment.

6. **The Kinds of Sentences Available**

With the offense of conviction being a Class D Felony, both probation and varying forms of imprisonment are available to the Court (including intermittent or home confinement) are available to the Court.

7. **The Sentencing Range Established**

As noted in the PSR, Homan's discretionary sentencing guideline range is 24-36 months incarceration, before any departures[i] or any §3553(a) considerations. (PSR, ¶ 77).

8. **Pertinent Policy Statement**

Homan has nothing to add.

9. **The Need to Avoid Unwarranted Sentencing Disparities**

Homan has nothing to add at this time.

10. **Need to Provide Restitution**

None has been requested. (PSR, ¶ 86)

C. **Sentencing Recommendation**

Based on the information above, the PSR, and additional information to be provided at the sentencing hearing in this matter, Homan will ask the Court to impose a period of no

Hart Powell, SC
Attorneys at Law
735 North Water Street
Suite 1212
Milwaukee, WI 53202
(414) 271-9595

more than 3 years of probation, which is sufficient but not greater than necessary to serve the purposes of 18 U.S.C. §3553(a)(2).

Dated at Milwaukee, Wisconsin, this 5th day of December, 2024.

Respectfully submitted,

By: /s/ *Craig S. Powell*
Craig S. Powell
SBN: 1046248
cspowell@hartpowell.com

**HART POWELL, SC**
ATTORNEYS AT LAW
735 NORTH WATER STREET
SUITE 1212
MILWAUKEE, WI 53202
(414) 271-9595